Cindy A. **HILL**, Plaintiff and Appellee,

v.

Bradley T. **HILL**, Defendant and Appellant.

No. 981038–CA

Court of Appeals of Utah.

Nov. 13, 1998.

James D. Garrett, Salt Lake City, for Appellant.

Bennett P. Peterson, Bountiful, for Appellee.

Before WILKINS, Associate P.J., and BENCH and JACKSON, JJ.

## OPINION

JACKSON, Judge:

Bradley T. Hill challenges the trial court's modification of the divorce decree that ended his marriage to Cindy A. Hill. We affirm.

## FACTS

The Hills were divorced by a decree dated October 12, 1996. At the time of the divorce, the Hills had three minor children: Matt, Heather, and Casey, who was born October 30, 1984. Mr. Hill received custody of Matt and Casey, while Ms. Hill received custody of Heather. Mr. Hill retained possession of the marital home and was required by the decree to pay Ms. Hill her interest in the home's equity when Casey reached the age of majority or Mr. Hill moved from or sold the home.

Sometime toward the end of the summer of 1996, Ms. Hill became pregnant by another man to whom she was not married. As a result, in April of 1997, she bore a son named Jarod. Also, after the divorce trial, Casey began staying at Ms. Hill's home quite often and eventually began living with her again.

In February 1997, Mr. Hill filed a petition seeking to end his alimony payments to Ms. Hill. Ms. Hill countered with a petition to modify the decree regarding custody of Casey, child support, and payment of her equity in the marital home. Following a trial, the trial court denied Mr. Hill's request to end alimony and modified the divorce decree to give custody of Casey to Ms. Hill, increase accordingly the child support paid to Ms. Hill, and require Mr. Hill to pay Ms. Hill her equity in the marital home within two years. The trial court further denied Ms. Hill's request for attorney fees incurred in the modification proceedings.

Mr. Hill appeals the trial court's ruling, arguing that (1) because Ms. Hill had a child with another man, the trial court should have determined that she was cohabiting with the other man and ended Mr. Hill's alimony obligation under Utah Code Ann. § 30–3–5(9)

(1998)[1]; (2) the trial court abused its discretion by including expenses related to Jarod in computing Mr. Hill's child support obligation; and (3) the trial court abused its discretion by requiring Mr. Hill to pay Ms. Hill within two years her portion of the equity in the marital home.[2] Ms. Hill requests attorney fees on appeal.

## ANALYSIS

▬ Mr. Hill first maintains that the trial court incorrectly used the definition of "cohabitation" from previous case law regarding alimony termination to analyze the facts of this case. *See Haddow v. Haddow*, 707 P.2d 669, 672 (Utah 1985) (establishing two prongs of cohabitation test as "common residency and sexual contact evidencing conjugal association"); *Pendleton v. Pendleton*, 918 P.2d 159, 160 (Utah Ct.App.1996) (applying *Haddow* test). He asserts the court should instead have applied the definition of "cohabitant" found in the Cohabitant Abuse Act, Utah Code Ann. §§ 30–6–1 to –14 (1998). Whether the trial court selected the correct legal definition to apply to the facts of a case presents a question of law. *See C & Y Corp. v. General Biometrics, Inc.*, 896 P.2d 47, 54 (Utah Ct.App.1995).

To determine if the Legislature meant its definition of cohabitant to be applied in cases other than those involving cohabitant abuse, we will " 'not look beyond plain and unambiguous language.' " *Gull Labs., Inc. v. Utah State Tax Comm'n*, 936 P.2d 1082, 1084 (Utah Ct.App.1997) (quoting *US Xpress, Inc. v. Utah State Tax Comm'n*, 886 P.2d 1115, 1117 (Utah Ct.App.1994)). We assume that the "words and phrases used were chosen carefully and advisedly." *Id.*

The Cohabitant Abuse Act states,

*As used in this chapter:* ...

(2) "Cohabitant" means an emancipated person pursuant to Section 15–2–1 or a person who is 16 years of age or older who:

(a) is or was a spouse of the other party;

(b) is or was living as if a spouse of the other party;

(c) is related by blood or marriage to the other party;

(d) has one or more children in common with the other party; or

(e) resides or has resided in the same residence as the other party.

Utah Code Ann. § 30–6–1(2) (1998) (emphasis added).

▬ This section's plain language specifies that the definitions in that section are to be used solely for purposes of the Cohabitant Abuse Act. We must therefore presume that the Legislature "carefully and advisedly" limited the use of these definitions to the particular context addressed. *See Gull Labs.*, 936 P.2d at 1084. We divine no legislative intent to abrogate the case law defining cohabitation in the alimony-termination context.

Even so, Mr. Hill argues public policy dictates that we should not tolerate divergent treatment of people sharing children—in one context defining cohabitant broadly to protect them from abusing each other and in another context defining cohabitant more narrowly to allow them to receive alimony from former spouses. He contends that by allowing Ms. Hill to continue to receive alimony from Mr. Hill we are countenancing her "immoral" behavior. However, as our supreme court has noted, "To some extent, the meaning of the term [cohabitation] depends upon the context in which it is used." *Haddow*, 707 P.2d at 671. And, the supreme court has adopted a narrower definition in the alimony-termination context than the Legislature has in the cohabitant-abuse context. With these definitions firmly established in their respective contexts and presumably based on the public policies un-

---

1. Utah Code Ann. § 30–3–5(9) (1998) reads: "Any order of the court that a party pay alimony to a former spouse terminates upon establishment by the party paying alimony that the former spouse is cohabitating with another person."

2. Mr. Hill also argues that, for purposes of figuring child support, the trial court calculated Ms.

Hill's imputed income incorrectly under Utah Code Ann. § 78–45–7.5(7)(b) (Supp.1998). We have reviewed this issue and conclude the trial court correctly applied section 78–45–7.5(7)(b) when it exercised its discretion in computing income to be imputed to Ms. Hill.

derlying alimony and the remedying of cohabitant abuse, it is not our place—as an intermediate appellate court—to revise them. *See Hart v. Salt Lake County Comm'n*, 945 P.2d 125, 138 (Utah Ct.App.) (stating we are "obligated under the doctrine of stare decisis to accept the rulings of the supreme court"), *cert. denied*, 953 P.2d 449 (Utah 1997). Accordingly, we conclude the trial court correctly followed the supreme court's direction by applying the *Haddow* definition of cohabitation in this case. We thus affirm the trial court's decision not to terminate Ms. Hill's alimony.[3] *See Haddow*, 707 P.2d at 672.

■ Mr. Hill next asserts the trial court abused its discretion by including expenses for Jarod in Ms. Hill's monthly expenses when computing Mr. Hill's child support obligation. "We will not upset the trial court's apportionment of financial responsibilities in the absence of manifest injustice or inequity that indicates a clear abuse of discretion." *Maughan v. Maughan*, 770 P.2d 156, 161 (Utah Ct.App.1989). The trial court added the $175 in child support received by Ms. Hill from Jarod's father to Ms. Hill's imputed income. Ms. Hill testified that the expenses for Jarod equaled about $150 out of her total monthly expenses. Mr. Hill did not present any evidence to dispute her testimony on this issue.

Consequently, by including the $175 child support in Ms. Hill's total monthly income and the $150 of expenses for Jarod in Ms. Hill's total monthly expenses, the trial court essentially offset the two amounts. This offset did not appreciably affect the amount of child support the trial court ordered of Mr. Hill. We thus determine the trial court did not abuse its discretion because it did not "apport[ion] a greater financial responsibility

on [Mr. Hill] to support [a] child fathered by [a] third party."

■ Mr. Hill finally complains that the trial court abused its discretion by ordering him to pay Ms. Hill her equity interest in the marital home within two years of the modification order. Mr. Hill argues that the two-year payout based on a change in Casey's physical custody was not envisioned in the original decree to which the parties stipulated, and, therefore, the trial court could not modify the decree in this way. However, a trial court may modify the division of property in a stipulated divorce decree because of "'a substantial change of circumstances occurring since the entry of the decree and not contemplated in the decree itself.'" *Whitehouse v. Whitehouse*, 790 P.2d 57, 61 (Utah Ct.App.1990) (quoting *Naylor v. Naylor*, 700 P.2d 707, 710 (Utah 1985)).

■ We review the "trial court's modification determination for an abuse of discretion." *Toone v. Toone*, 952 P.2d 112, 114 (Utah Ct.App.1998). The trial court found that the change of circumstances not accounted for by the decree was the change of Casey's physical custody from Mr. Hill to Ms. Hill. The trial court correctly recognized that one of the contingencies set forth in the original decree requiring Mr. Hill to pay the equity was Casey turning eighteen. The trial court thus determined the parties had tied the equity payment to Casey's need for housing. Now that Casey no longer needed that particular home, the trial court awarded Ms. Hill her equity, but gave Mr. Hill two years to produce the money—a deadline Ms. Hill does not contest. We cannot say the trial court abused its discretion in determining Casey's change of custody was a substantial change of circumstance supporting the modification of Mr. Hill's deadline for paying Ms. Hill her equity.[4]

---

3. Mr. Hill conceded at oral argument that, analyzed under current case law, the facts of this case do not show cohabitation. *See Haddow v. Haddow*, 707 P.2d 669, 672 (Utah 1985); *Pendleton v. Pendleton*, 918 P.2d 159, 160 n. 1 (Utah Ct.App.1996).

4. In the original divorce proceeding, Ms. Hill's attorney asked the trial court if one of the contingencies for requiring the equity payoff could be "if [the marital home] is no longer used as a

residence for the minor child? ... [T]he possibility of a custody change in the interim ... ought to trigger the disposition of the residence." The trial court replied, "I think if it's no longer used as the primary residence of the minor children, then that would be something that could be looked at." The contingency was thus not included in the original decree, but Mr. Hill's counsel did not object to the idea that such a contingency "could be looked at" later.

As a final matter, although the trial court did not award Ms. Hill attorney fees in the modification proceedings, she requests attorney fees on appeal. However, we conclude Ms. Hill is not entitled to attorney fees on appeal "because attorney fees were not awarded below." *Baker v. Baker*, 866 P.2d 540, 547 (Utah Ct.App.1993).

Accordingly, we affirm the trial court as to all issues presented. We also deny Ms. Hill's request for attorney fees on appeal.

WILKINS, Associate P.J., and BENCH, J., concur.